(44 Misc. Rep. 112.)

DUNHAM et al. v. BINGHAMTON & LESTERSHIRE BASEBALL ASS'N et al.

(Supreme Court, Trial Term, Broome County. June, 1904.)

1. INJUNCTION—SUNDAY BASE BALL.

Pen. Code, §§ 259, 260, 265, define the Sabbath and Sabbath breaking, and prohibit playing or other public sports, exercises, or shows on Sunday. *Held*, that a refusal to vacate a preliminary injunction in a suit by owners of property adjacent to a base ball park to restrain playing on Sunday in such park on the ground that the owners will suffer from the noise, con-

fusion, and public parade incident to the game, which would deprive them of their usual and necessary Sunday quiet, and depreciate the value of the property for residential purposes, was proper.

Action by Thomas L. Dunham and others against the Binghamton & Lestershire Baseball Association and others. Motion to dismiss injunction. Denied.

Carver, Deyo & Hitchcock, for plaintiffs.
Harry C. Walker, for defendants.

FORBES, J.   This is a motion to dissolve an injunction, procured by the plaintiffs, restraining the defendants from playing baseball on Sunday at their ground in Lestershire.   The question involved in this motion and in the action to restrain is the right of the plaintiffs to maintain an action in equity resting upon the claim that the plaintiffs are likely to suffer a personal injury, and that their property will be depreciated in value, by a violation of the statute against Sunday playing. The question presented does not involve the moral conduct nor the criminal offense of the defendants under the statute.   The claim rests solely upon the right of the plaintiffs to maintain this action in equity, based upon the theory "that wherever there is an injury there is also a remedy."   Butler v. Manhattan R. Co., 143 N. Y. 417, 38 N. E. 454, 26 L. R. A. 46, 42 Am. St. Rep. 738.   The plaintiffs are residents and property owners in the vicinity of the park in which it is proposed to play Sunday games of baseball.   Their claim is that the noise, confusion, and public parade of the people incident to the games will deprive the plaintiffs of, and prevent them from taking, their usual, proper, and necessary Sabbath quiet and rest, during these games, at the place in question.   Matter of Rupp & Curtiss, 33 App. Div. 468, 53 N. Y. Supp. 927;   People v. Moses, 140 N. Y. 214, 35 N. E. 499; People v. Havnor, 149 N. Y. 195, 43 N. E. 541, 31 L. R. A. 689, 52 Am. St. Rep. 707.   The plaintiffs also most earnestly maintain that the actual value of their property for residential purposes will be depreciated, and that they will be injured in person and property, if the defendants are not restrained.   The affidavits used on this motion are so voluminous and contradictory that it would be unwise at this time to attempt to decide that question upon the merits.   It is claimed on the one side that to restrain the defendants will work great pecuniary injury to the association.   This claim is clearly based upon the theory that the defendants have the actual, legal right to conduct entertainments of this character at the place in question; to collect crowds of citizens at that place; to receive fees for admission to the park; and to profit by what must now be conceded on other days to be a popular and interesting sport.   Section 265 of the Penal Code expressly "prohibits playing, or other public sport, exercises or shows, upon the first day of the week, and all noise disturbing the peace of the day."   Several other sections prohibit all trades, labor, and public traffic on Sundays, except works of necessity or charity.   Section 259 defines the Sabbath, and declares the purpose for which it was instituted, as follows:   "The first day of the week being by general consent set apart for rest and religious uses, the law prohibits the doing on that day of certain acts hereinafter specified, which are serious interruptions of

the repose and religious liberty of the community." Section 260 defines Sabbath breaking as "a violation of the foregoing prohibition." This language, together with the undoubted trend of judicial authority, directly tends to show that the liberty of conscience and the right of undisturbed repose on the Sabbath are the bases of the plaintiffs' cause of action, upon the theory that, when a statute is obviously intended to provide for the safety and quiet of a community, it is reasonable; and, where the statute is lawful, a compliance with its purposes must be sustained. City of Rochester v. West, 164 N. Y. 510, 58 N. E. 673, 79 Am. St. Rep. 659, 53 L. R. A. 548. It is true that hundreds of laboring people, who must toil during the balance of the week, get much needed recreation and rest in certain characters of entertainment on Sunday. To deprive them of these pleasures and advantages would be to discriminate against these classes as nonchurch-going people. The numbers so accommodated and entertained are so great, in proportion to those who do not desire such entertainments on the Sabbath, but rather prefer to keep that day as a day of rest and worship, that it may well be said to present a difficult question for solution. Does the right or wrong of the question depend upon the character of the entertainment? I think so. Under the statutes of this state all classes of tradesmen, artisans, and business men, such as merchants, butchers, barbers, saloon keepers, race track associations, and fairs, are absolutely prohibited, by statute, from opening their places of business or entertaining the public on Sunday. These statutes must be taken into consideration whenever the moral side of the question comes under review. What superior right, if any, have the defendants to entertainments of this character, especially at a time and place where individuals are to be annoyed by these games, and their property is to be rendered less valuable? Much may be said in favor of proper Sunday recreation; but is baseball playing so generally attended, and has it become such a public necessity, as an amusement, that it ought to be upheld in this community, under the circumstances? To answer this question in the affirmative is to disregard the rights of all other citizens who do not approve of this conduct on the Sabbath, and to imperil their rest and property by yielding to this custom. Railroads, steam and electric, in our cities and thickly settled villages, affording to a large portion of the population facilities for attending places of public worship, or modest and quiet recreation, seem to have become necessities to the general public, and cannot be discriminated against successfully, since this line of traffic is intended for the interest, benefit, and accommodation of the community at large, and takes the place largely of other public travel. The same thing may be said of all classes of public service, among which are the telegraph, telephone, electric light service, and necessary travel upon the public streets and thoroughfares. When a Sabbath entertainment works mischief, annoyance, or injury to a community by being in such close proximity to residential parts of a city or village, if the individual sustains special damages different from the damage to the whole public, he may maintain an action and have an injunction to restrain that entertainment. New York Cement Co. v. Consolidation R. C. Co., 178 N. Y. 167, 70 N. E. 451. It is, in my judgment, unwise to decide that question upon the merits in this application, since this

question can be disposed of by a trial in a court of equity, where the witnesses can be presented, examined, and a fair and just determination reached; and no serious damage or inconvenience will be sustained by the defendants in the meantime.   The motion to dissolve the injunction is therefore denied, with costs.

Motion denied, with costs.