(61 Misc. Rep. 42.)

PEOPLE v. ROACH et al.

(Court of General Sessions, New York County.    October, 1908.)

SUNDAY (§ 6*)—VIOLATION OF SUNDAY LAW—BASEBALL.

> To constitute a violation of Pen. Code, § 265, an admission fee must be charged at a game of baseball played on Sunday, or it must constitute a serious interruption of the repose and religious liberty of the community.
>
> [Ed. Note.—For other cases, see Sunday, Cent. Dig. § 11; Dec. Dig. § 6.*]

John Roach and Wilfred Carsey were convicted of playing ball on Sunday, and appeal. Reversed.

Fromme Brothers (Herman Fromme, of counsel), for appellant.

William Travers Jerome, Dist. Atty. (E. Crosby Kindleberger, of counsel), for the People.

FOSTER, J. This is an appeal from a judgment of the city magistrate's court, convicting of crime (and punishing therefor) both the defendants for playing ball in a vacant lot at Riverdale avenue and 233d street, Bronx, on Sunday, June 21, 1908.

The question whether or not ball playing on Sunday is a crime has been frequently before the courts, and "of one accord" the courts have held it no crime per se, though attending circumstances may make

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

it a crime. I have tried to examine all the authorities bearing upon the subject, and believe that I have done so. I have certainly examined every case to which my attention has been directed.

The earliest case was People v. Dennin, 35 Hun, 327, wherein Judge Barnard, writing for the General Term in the Second Judicial Department, held that, to constitute a violation of secion 265 of the Penal Code, the Sunday ball playing complained of must be shown to seriously interrupt the repose or religious liberty of the community; and it was further therein held that the Sunday law has for its object the repose and religious liberty of the community on Sunday, and must be construed in the light of these beneficent purposes. This case has been repeatedly followed by an unbroken line of authorities, so far as I can find. Among the cases following this rule of law is the De Mott Case, 38 Misc. Rep. 171, 77 N. Y. Supp. 249, Judge Gaynor; again in Ontario Field Club v. McAdoo, 56 Misc. Rep. 285, 107 N. Y. Supp. 295, Judge Blanchard; and again in People v. Poole, 44 Misc. Rep. 118, 89 N. Y. Supp. 773, where that most eminent and entertaining jurist, Judge Gaynor, reviews the authorities, both secular and legal, in an interesting history of the Sunday law. In the Poole Case, it may be said, in passing, Judge Gaynor held that, if an admission fee was charged, then ball playing on Sunday became a public sport and criminal.

The leading case in our Court of Appeals on the subject of the Sunday law is People v. Moses, 140 N. Y. 214, 35 N. E. 499. In this case the defendant was convicted of crime for fishing on Sunday in a private pond adjoining a public highway. The Dennin Case, supra, in the opinion of the court, is referred to without approval; but a careful reading of the record of that case will show that three judges (Earl, Andrews, and O'Brien) held that the simple act of fishing, even though constituting no serious interruption of the repose and religious liberty of the community, is a crime, while three judges (Finch, Peckham and Gray) flatly dissented. The seventh judge (Maynard), whose vote controlled the decision, expressed himself as not concurring in the reasoning, but only in the result, because, to his mind:

"The act complained of was committed under such circumstances as to constitute a serious interruption of the repose and religious liberty of the community."

It follows, therefore, that the Moses Case cannot be deemed an authority overruling the earlier cases, which held that the mere act of playing ball on Sunday did not constitute a crime, in the absence of attending circumstances showing a serious interruption of the repose or religious liberty of the community. On authority, as well as principle, it seems to me that the excerpt from the opinion of Judge Gaynor, writing for the Appellate Division of the Second Department, in People v. Hemleb, 127 App. Div. 356, 111 N. Y. Supp. 690, wherein he says:

"When it is considered that nowhere outside of the British Isles has the Old Testament notion of a still Sabbath ever existed in the Christian world, it is impossible to attribute to the aggregate Christian mind, as rather fairly represented in our Legislature, with such a varied national lineage in its membership, any such strictness or singleness of purpose. Christians of no nation,

church or sect, except in the British Isles, and not there until recent centuries, ever entertained the Old Testament notion of a still Sabbath, but favored and practiced innocent and healthy exercises and amusements after church on Sunday. John Knox visited John Calvin of a Sunday afternoon at Geneva, and found him out back at a game of bowls on the green,"

—is, and of good right ought to be, of great weight in the proper interpretation of those sections of the Penal Code which are popularly designated as the "Sunday Law." I therefore cannot agree with the opinion of the learned magistrate below.

A careful reading of the evidence herein shows clearly that neither the repose nor the religious liberty of the community, nor the comfort of the neighborhood, was disturbed by the ball playing complained of. Indeed, the evidence shows that there were no houses within two blocks of the locus in quo, which was secluded and entirely surrounded by trees and swamps and the Spuyten Duyvil creek. The exhaustive brief submitted by the district attorney proceeds upon the theory that an admission fee was charged; and it is true that the police officer, complainant, endeavored to inject into the case a circumambient atmosphere of commercialism which the legal evidence in the case wholly fails to support.

It does not appear from the evidence that any admission fee was charged. Had this been made to appear, a crime would have been shown. People v. De Mott, 38 Misc. Rep. 171, 77 N. Y. Supp. 249; People v. Poole, 44 Misc. Rep. 118, 89 N. Y. Supp. 773. I remember, as a boy, to have heard by way of jest of a so-called Puritan whom a neighbor discovered,

> "A hanging of his cat on a Monday,
> For the catching of a rat on a Sunday."

Happily, that "blue law" spirit is not the law of New York to-day. It follows, therefore, that the judgment of the court below was based on an erroneous view of the law, and must be reversed.

Judgment reversed.